Bernard L. ALPERT, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 90, AFL–CIO, and its agents Bernard Gilbride and Philip E. Reilly, Respondents.

Civ. No. 7324.

United States District Court
D. Connecticut,
Civil Division.
July 7, 1958.

Sidney D. Goldberg, Washington, D. C., for petitioner. John Lashnits, New Haven, Conn. for charging party, Southern New England Tel. Co.

Norman Zolot, Hamden, Conn., James O'Connor Shea, New Haven, Conn., for respondents.

ANDERSON, District Judge.

This is a petition for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(*l*) which in substance alleges that the respondent induced and encouraged the employees of M. B. Foster Electric Co., who as electrical subcontractor was engaged in carrying out a contract with Yale University for the construction of an addition to the University's Dunham Electrical Laboratory at New Haven, Connecticut, to engage in a concerted refusal to handle work and materials and to perform the services which the Foster Co. was supposed to fulfill under its subcontract, with the object of forcing Yale Univer-

sity and M. B. Foster Co. to take away from the employees of the Southern New England Telephone Co. the function of pulling or running telephone wire and cable through conduits in connection with the installation of telephone service at the Laboratory and with the further object of forcing those employers to assign the work to the members of respondent, Local 90.

A hearing was held on an order to show cause.

*Findings of Fact:*

1. Petitioner is Regional Director of the First Region of the National Labor Relations Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. Respondent International Brotherhood of Electrical Workers, Local No. 90, AFL-CIO (herein called the Electrical Workers), an unincorporated association, is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act, has its principal office in and is engaged within this judicial district in promoting and protecting the interests of its employees members and in transacting business.

3. At all times material herein, respondent Bernard Gilbride has been business agent of respondent Electrical Workers, and respondent Philip E. Reilly has been its recording secretary. On May 21, 1958 the respondent Reilly assumed the function of acting union steward for the Electrical Workers at the Dunham Laboratory job which was ratified and confirmed by the Electrical Workers. Early on May 22, 1958 Reilly was expressly appointed acting union steward on this job by Electrical Workers. Each is and has been its agent within the meaning of Sections 2(13), 8(b) and 10(*l*) of the Act.

4. The Southern New England Telephone Company (herein called the Telephone Company) is a Connecticut corporation whose principal office is located at New Haven, Connecticut. It is a public utility engaged in the transmission of telephonic communications and in furnishing communications services both intra-state and in interstate commerce.

5. On or about May 23, 1958, the Telephone Company pursuant to the provisions of the Act, filed a charge with the Board alleging that respondents have engaged in, and were then engaging in, unfair labor practices within the meaning of Section 8(b), sub-section (4) (D) of the Act.

6. Said charge was referred to petitioner as Regional Director of the First Region of the Board for investigation, and was investigated by petitioner and under his supervision.

7. During all of the times with which this case is concerned Yale University, through contracts already entered into, has been erecting a new addition to its Dunham Electrical Laboratory, at New Haven, Connecticut.

8. In connection with the construction of the laboratory, Yale contracted with the Telephone Company to install telephone equipment for faculty members occupying offices in the partially completed addition, some of whom are engaged in research work on government contracts.

9. During all of this period the installation employees of the Telephone Company have been members of or represented by an independent labor organization, that is, one not affiliated with the AFL-CIO.

10. On or about May 21, 1958 the Telephone Company assigned the work of installing such telephone equipment to its installation employees who are members of or represented by their local union and such employees commenced work on the premises under construction.

11. For many years, respondent Electrical Workers and its affiliated local unions have contended that the work of pulling telephone wire and cable through conduits is under the exclusive jurisdiction of and should be performed only by employees who are members of or represented by respondent Electrical Workers or its affiliated local unions.

12. At no time with which this case is concerned has respondent Electrical Workers been certified by the Board as the collective bargaining representative of employees of the Telephone Company in performing any of the work of installing telephone lines or equipment in the Dunham laboratory addition.

13. During this period M. B. Foster Electric Company (herein called the Foster Company), was engaged as electrical subcontractor on the construction of the Laboratory addition; and the Foster Company, in carrying out its work under the subcontract, employed electricians who are members of or represented by respondent Electrical Workers.

14. It is a principle of conduct of respondent Electrical Workers that its members will not work on a job with non-union workers or with members of unions not affiliated with AFL-CIO; nor will its members work on a job where members of such another union are performing work which the Electrical Workers consider is within the exclusive province of work customarily performed by members of the Electrical Workers.

15. The petitioner has reasonable cause to believe that the respondent Electrical Workers, when it learned that the employees of the Telephone Company were pulling or running telephone wire and cable through conduits at the addition to the Dunham Laboratory, persuaded and encouraged its members who were employees of the Foster Company at the Laboratory job to stop their work at the Laboratory; and that the respondent Electrical Workers advised the Foster Company and Yale University that these workers were stopping and did stop their work at the Dunham Laboratory and would continue to stay away from their work so long as the Telephone Company employees were assigned the work of pulling or running wire and cable through conduits on that job.

16. The petitioner has reasonable cause further to believe that, after all of the employees of the Foster Company who were members of the Electrical Workers had stopped their work and left the job at Dunham Laboratory, Yale University, as a result of the pressure thus brought upon it, was forced to arrange with the Telephone Company to withdraw its employees from the premises at the Dunham Laboratory and discontinue their work there, which was done, so that telephone connections could not be made; and that thereafter the employees of the Foster Company who were members of the Electrical Workers at the direction of the respondents returned to work.

17. The petitioner therefore has reasonable cause to believe that the respondents have induced and encouraged the members of Electrical Workers, employees of the Foster Company to engage in a concerted refusal in the course of their employment to handle work and materials and perform services which the Foster Company had contracted for at the Dunham Laboratory with the object of forcing the Foster Company and Yale University to take away from the employees of the Telephone Company the function of pulling or running telephone wire and cable through conduits and assign such work to the members of the respondent Electrical Workers.

18. This conduct by respondents, occurring in connection with the operations of the Telephone Company, have a close, intimate and substantial relation to trade, traffic, and commerce among the several states and tend to lead and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

19. It may be fairly anticipated that, unless restrained, respondents will repeat or continue the same or similar acts and conduct.

*Conclusions of Law:*

1. This Court has jurisdiction of the parties and the subject matter of this proceeding and is empowered to grant injunctive relief under Section 10(*l*) of the Act.

2. Respondent Electrical Workers is a labor organization within the meaning

of Sections 2(5), 8(b) and 10(*l*) of the Act.

3. Respondents Gilbride and Reilly are agents of respondent Electrical Workers within the meaning of Sections 2(13), 8(b) and 10(*l*) of the Act.

4. There is reasonable cause to believe that:

(a) The Telephone Company is engaged in commerce within the meaning of Section 2, subsections (6) and (7) of the Act.

(b) Respondents have engaged in unfair labor practices within the meaning of Section 8(b), sub-section (4) (D) of the Act, affecting commerce within the meaning of Section 2, sub-sections (6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

5. The facts and conditions are such that under the terms of the Act, to fulfill the purposes of the Act and to protect the jurisdiction of the Board, injunctive relief is appropriate and it is just and proper that a temporary injunction issue.

*Discussion:*

■ The respondents claim that the work stoppage was brought about, not by the Electrical Workers as a union, but by the separate lawful acts of each individual member. However, the presence and activities of union officials, the unions attitude toward this kind of situation, its pattern of behavior with regard to it in the area in which Local 90 has jurisdiction all imply organizationally derived concerted action. As has been said many times before in other contexts, what the officers and members of Local 90 did, speaks more loudly than what they have said. The witnesses for the respondents assert that for many years an informal agreement existed between the Telephone Company and the Electrical Workers with regard to this very jurisdictional question, and that recently the Telephone Company has repudiated it. Even if this is so, it is not a matter to which this court can give any consideration in this case. It is obvious that this jurisdictional dispute has gone on for several years and has never been properly resolved with the result that a great deal of hardship has been imposed upon all concerned.

■ The respondents contend that Section 10(*l*) of the N.L.R.A. should not be invoked until proceedings under Section 10(k) have been carried out and completed, and then only if there is special reason to grant 10(*l*) relief at that time, and they cite N.L.R.B. v. United Association of Journeymen, 3 Cir., 1957, 242 F.2d 722. In the present case, however, there is intermittent but frequent damage to interstate commerce and an effort to circumvent the jurisdiction of the Board by seeking a direct determination of the labor union jurisdictional dispute through economic pressure on employers, even if no consideration is given to the irreparable damage which is likely to result through the repetition of the respondents' activities to the National Defense work in process in the Dunham Laboratory and to the employers and employees affected. Douds v. International Longshoremen's Association, 2 Cir., 1957, 242 F.2d 808.

■ The respondents also complain that once a temporary injunction issues in cases of this kind, the Board is inclined to let the case drift and remain undetermined indefinitely. It is, of course, no part of the court's function to say when or how the Board should hear the cases before it, but the statute empowers and *directs* the Board to hear and *determine* the dispute and the court is not disposed to put the respondents to the necessity of petitioning for the dissolution of the injunction. The purpose of the injunctive relief is to protect the Board's jurisdiction to enable it to hear and determine the dispute. The Board cannot by indefinite delay and a refusal to exercise its jurisdiction compel the court to transmute the Board's conclusion, based merely upon a preliminary investigation, into what is tantamount to a permanent disposition of the labor union jurisdictional question. There-

fore, the temporary injunction in this case will remain operative for six months from this date unless within thirty days before the end of the six months period the petitioner shows good cause for continuing it for some further time.

Subject to this limitation, a temporary injunction may issue accordingly.