NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RADIO & TELEVISION BROADCAST
ENGINEERS UNION, LOCAL 1212, International Brotherhood of Electrical
Workers, AFL–CIO, Respondent.

No. 24, Docket 25573.

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1959.

Decided Dec. 3, 1959.

See also 119 NLRB 954.

Melvin J. Welles, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Robert Silagi, of Schoenwald, Silagi & Seiser, New York City (Arthur L. Galub, New York City, on the brief), for respondent.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and J. JOSEPH SMITH, District Judge.

CLARK, Chief Judge.

The National Labor Relations Board petitions for enforcement of its order 121 NLRB No. 158 that the respondent union (IBEW) cease and desist from conduct found to constitute an unfair labor practice under § 8(b) (4) (D), 29 U.S.C. § 158(b) (4) (D), the "jurisdictional dispute" provision of the Labor-Management Relations Act of 1947. Briefly stated, the underlying dispute is between the respondent union and an IATSE local[1] over assignment by the Columbia Broadcasting System of lighting work in connection with certain "remote" television broadcasts, i. e., those not originating in the company's home studios. This continuing dispute has necessitated the cancellation of several telecasts following work stoppages by one of the unions when lighting work was assigned to the other. The present proceeding arises from such an incident instigated by respondent's refusal to operate the camera equipment unless it also performed the program's lighting tasks.

For purposes of this enforcement proceeding, respondent concedes its violation of § 8(b) (4) (D). But it contends that the Board failed to comply with the special procedure prescribed by § 10(k), 29 U.S.C. § 160(k).[2] This section provides that when an unfair labor practice is charged under § 8(b) (4) (D), "the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen," with an exception not here involved encouraging voluntary adjustment of the dispute. The Board concedes that a determination under this section is a prerequisite to the issuance of a cease and desist order, but contends that its hearing and finding fulfilled the requirement.

Thus the only question involves the construction of the statutory direction to "determine the dispute." The Board's position is that its finding that the respondent had no claim by contract, order, or certification to the disputed work suffices, while respondent maintains that the Board is required affirmatively to allocate the work to one of the competing unions. This issue has been resolved against the Board by the Third and Seventh Circuits. See N. L. R. B. v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Locals 420 and 428, AFL (Hake), 3 Cir., 242 F.2d 722; N. L. R. B. v. United Brotherhood of Carpenters and Joiners of America, AFL–CIO (Wendnagel), 7 Cir., 261 F.2d 166. But the Board has adhered to its position, although it has not sought certiorari to resolve the dispute.

We turn first to an examination of the statutory language. The scheme of § 10(k) is to provide an opportunity for the private adjustment of disputes causing jurisdictional strikes; but in the absence of such adjustment, the Board itself is to determine the disputes. It is difficult to attribute any meaning to the word "dispute" unless it refers to the controversy between the unions as to which is entitled to the work. It also seems clear that the Board's function is to impose a settlement in the event that the parties are unable themselves to reach agreement.

---

1. Theatrical Protective Union No. 1, International Alliance of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada, AFL–CIO.

2. Sec. 10(k) provides:
"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

Since private adjustment can only envision agreement as to which group is entitled to the work, the Board is required to make this determination where private negotiation proves unsuccessful. Further, under the Board's view that Congress has left the determination of disputes involving work assignments to the employer, the § 10(k) hearing and determination become superfluous. Private settlement would be equally encouraged by a provision for a 10-day notice in advance of an unfair labor practice proceeding.

■■■ Although the language of the enactment is unambiguous, the legislative history is not thereby rendered immaterial. But since Judge Hastie in the Hake case, supra, 3 Cir., 242 F.2d 722, has fully reviewed this history, we shall content ourselves with a brief summarization. The original provision, as adopted by the Senate, would have settled jurisdictional disputes by compulsory arbitration before a Board-appointed arbitrator or in the alternative through adjudication by the Board itself. S. 1126, 80th Cong., 1st Sess. (1947). But the arbitration clause was deleted in conference committee, so that the bill as enacted prescribed Board determination alone. H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 57 (1947). The discussion of these provisions on the floor and in committee reports leaves no doubt that the Congress contemplated affirmative Board adjudication of disputed work allotments. See Hake, supra, 3 Cir., 242 F.2d 722, 725; 71 Harv.L.Rev. 1364, 1366 (1958).

The Board urges that its policy has encouraged the voluntary settlement of jurisdictional disputes and thus has refuted the fears of those who opposed passage of § 10(k) on the ground that it would encourage rather than prevent strikes. Such apprehension not only was expressed in the Congress, but also constituted one of the grounds for the Presi-

dential veto. See 93 Cong.Rec. 6452–6453, 6506, 7486. But this line of argument in effect admits that the Board's construction of the Congressional mandate does not conform to the understanding expressed by opponents, as well as proponents, of the section. Since the provision has not been effectuated as enacted, whether or not jurisdictional strikes will be encouraged remains as speculative today as it was in 1947. Since Congress chose to disregard this risk, it is not for the courts or the Board to accord it greater weight. It might also be noted in passing that during the pendency of the present case, another telecast was cancelled because of picketing by the IATSE when the disputed lighting work was assigned to respondent. Thus the prospect of voluntary settlement seems somewhat remote.

The Board also relies on arguments based on the internal consistency of the Act's provisions. Thus it cites § 303(a) (4), which contains language substantially identical to that of § 8(b) (4) (D), but which by virtue of § 303(b) grants an independent action for damages to those injured by jurisdictional disputes. The Board asserts that an incongruous result is reached if damages may be assessed under § 303(a) (4), although the union may be found entitled to the work by virtue of an affirmative allocation under § 10(k). In this respect reliance is placed on International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 9 Cir., 189 F.2d 177, affirmed 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275. While there is language in the opinion of the Ninth Circuit which supports the Board's position,[3] the Supreme Court's decision rests on the premise that the two sections are not to be construed *in pari materia*. It is to be expected that the considerations which underlie the grant of private redress differ from those which determine the application of administrative process.

---

3. "[U]nder the plain language of Section 8(b) (4) (D) we are unable to see how the Board in a Section 10(k) proceeding could make a determination adverse to the assignment of the work by [the employer]." 9 Cir., 189 F.2d 177, 188.

A conflict is also alleged to exist between an affirmative award of work jurisdiction and the provisions of §§ 8(a) (3) and 8(b) (2) which protect employees from discrimination because of their union membership or lack thereof. The Board notes its agreement with the suggestion by Judge Hastie in the Hake case, supra, 3 Cir., 242 F.2d 722, that a § 10(k) determination would not be binding on the employer; but it asserts that the determination "would presumptively authorize that union 'to cause or attempt to cause' the employer to discriminate against the incumbent employees to whom he has assigned the work." But in view of the nature of the disputed tasks here involved it is improbable that any employees will be displaced. Even assuming such displacement, Congress has apparently adjudged that this interest is outweighed by the policy of settling jurisdictional disputes. Further, the same result would seem to be effected by the Board's determination of disputes involving the scope of bargaining units. See Local 26 (Winslow Bros. & Smith Co.), 90 N.L.R.B. 1379; Amalgamated Meat Cutters & Butcher Workmen (Safeway Stores, Inc.), 101 N.L.R.B. 181; National Association of Broadcast Engineers & Technicians (American Broadcasting-Paramount Pictures), 110 N.L.R.B. 1233.

The Board's suggestion that the result here reached would "erect an almost insuperable obstacle" to the issuance of injunctive relief under § 10(*l*) is adequately answered by Alpert v. International Brotherhood of Electrical Workers, Local No. 90, AFL–CIO, D.C.Conn., 163 F.Supp. 774. Reliance is also placed on the lack of statutory standards on which to base an affirmative determination. But the relevant criteria have been suggested by Board Member Murdock, dissenting in Local 562 (Northwest Heating Company), 107 N.L.R.B. 542, 554.

It may be that the Board's assertions would be more persuasive if the intent of Congress were unclear. Note, however, Professor Cox's testimony that the Board's practice "is unsound whether it is required by the statute or results from misapplication." Hearings on Proposed Revisions of the Labor-Management Relations Act of 1947, Senate Committee on Labor & Public Welfare, 83d Cong., 1st Sess., pt. 4, pages 2428–2431 (1953). It is also instructive that there seems to have been no compliance with the Board's own rules, which recognize its power to allocate disputed tasks. This was the ground on which enforcement was refused by the Seventh Circuit in the Wendnagel case, supra, 7 Cir., 261 F.2d 166. Our attention has been directed to the fact that these rules have been "rephrased" subsequent to the hearing herein; but, as the Board itself notes, its rules are immaterial unless they comply with the statutory scheme.

In view of the unambiguous language of § 10(k), and supported as it is by the legislative history and the precedents, we are convinced that the Board's present position contravenes the statutory direction.

Accordingly, the petition for enforcement is denied.