Daniel P. DOOLEY, Acting Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

HIGHWAY TRUCKDRIVERS AND HELPERS, LOCAL 107, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

Civ. A. No. 2157.

United States District Court
D. Delaware.

Feb. 24, 1961.

See, also, 190 F.Supp. 112.

James T. Youngblood, Clifford M. Roth and George Burnstein, Washington, D. C., for National Labor Relations Bd.

David Coxe, Jr., Wilmington, Del., Richard Markowitz, Philadelphia, Pa., for Local 107.

Daniel A. Lynch, of King & Lynch, New York City, for Safeway Stores, Inc.

STEEL, District Judge.

Defendant has moved to dissolve the temporary injunction previously issued under § 10(*l*) of the Labor Management Act of 1947, as amended.[1] The opinion granting the injunction, Dooley v. Highway Truckdrivers, Local 107, D.C.Del. 1960, 182 F.Supp. 297, sets forth the factual background of the controversy.[2]

Defendant argues anew that the controversy does not involve a jurisdictional dispute between defendant and the members of Locals 639 and 660 who were assigned the truckdriving jobs by Safeway because Locals 639 and 660 were not contesting for the jobs either as against Safeway or against defendant whose members had previously done the work. Defendant argues that it is a prerequisite to a jurisdictional dispute that there be strife between the competing unions and between the unions and the company, and that the Supreme Court case of N. L. R. B. v. Radio & Television Broadcast Eng'rs Union, Local 1212, 364 U.S. 573, 81 S.Ct. 330, 334, 5 L.Ed.2d 302, supports this view. In that case the Court said, "[A] jurisdictional dispute under § 8(b) (4) (D) * * * is a dispute between two or more groups of employees over which is entitled to do certain work for an employer" and referred to "a quarrel between two [labor] groups * * * ".[3]

The emphasis which defendant places upon Radio & Television Broadcast Eng'rs, supra, is not justified. The question before it was not whether the controversy was covered by § 8(b) (4) (D).[4] It was concerned solely with proper functioning of the Board under § 10(k).[5] Moreover, it is by no means certain that a "dispute" or "quarrel" which the Supreme Court spoke of does not, as a legal concept, exist between the defendant and Locals 639 and 660.

Section 8(b) (4) (D) makes it an unfair labor practice for a labor organization to induce a work stoppage where an effect is "forcing or requiring any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * * ". The defendant asserts that the "particular work" sought by it is the driving of Safeway trucks as performed under its collective bargaining agreement with Safeway which expired on December 31, 1960, namely, trucking to and from Wilmington with vehicles *based in Wilmington*. If defendant is right in its narrow concept of the "particular work" in controversy, then clearly 8(b) (4) (D) was not violated since Safeway has not assigned any trucking in vehicles based in Wilmington to Locals 639 or 660. On the other hand, the Regional Director and Safeway claim that the "particular work" which defendant seeks should be broadly defined as the driving of Safeway trucks to and from Wilmington *regardless of where the trucks are based*. If this analysis is correct, it is equally

1. 29 U.S.C.A. § 160(*l*) (Supp.1960).

2. See also, Dooley v. Highway Truckdrivers, Local 107, D.C., 190 F.Supp. 112, amended, Dec. 20, 1960 (denying defendant's motion of October 13, 1960 to dissolve this injunction).

3. 81 S.Ct. at page 334.

4. 29 U.S.C.A. § 158(b) (4) (D) (Supp. 1960).

5. 29 U.S.C.A. § 160(k).

clear that there has been a violation of 8(b) (4) (D) since trucking to and from Wilmington in vehicles based outside of Wilmington has been assigned to the members of Locals 639 and 660. Picketing by defendant to force Safeway to assign that "particular work" would come squarely within the Act's prohibitions.

■■■ Ultimately the question of whether the dispute is embraced within § 8(b) (4) (D) will have to be settled. But that is not the present duty of the Court. At this juncture the Court is merely called upon to determine whether the Regional Director had reasonable cause to believe that § 8(b) (4) (D) was violated.[6] A reasonable determination is the antithesis of one which is arbitrary, illogical or irrational. So judged, the Court is satisfied that the Regional Director, with his expertise in matters of this kind, could reasonably conclude that the "particular work" in controversy is the driving of trucks to and from Wilmington regardless of where the trucks are based, thus making defendant's activities a direct violation of § 8(b) (4) (D).

As its second point, the union asserts that although the § 10(k) hearing took place a year ago, no final determination has been made by the Board. This delay, defendant argues, requires a dissolution of the injunction under the cautionary views expressed in Douds v. Wood, Wire & Metal Lathers Int'l Ass'n, 3 Cir., 1957, 245 F.2d 223 against the continuation of an injunction for an undue length of time while a § 10(k) determination by the Board is awaited. But despite what was said in Douds, the Court did not vacate the injunction or remand the action so that the district court could consider its dissolution even though the 10(k) dispute had not been determined 9 months after it had been heard. And in United Broth. of Carpen-

ters, etc., 10 Cir., 1948, 170 F.2d 863, 869, the failure of the Board for 10 months to determine a § 10(k) proceeding did not impel the Court to vacate the injunction, but simply caused it to remand the case so that the district court could consider modifying or dissolving the injunction in the light of all the circumstances.

In the present case the Board made a 10(k) determination adverse to the defendant. In re Highway Truckdrivers & Helpers, Local 107 and Safeway Stores, Inc., 129 N.L.R.B. No. 2 (1960).[7] This was on September 1, 1960, about 6 months after the 10(k) hearing took place, and well within the time limits dealt with in the Douds and United Brotherhood of Carpenters cases. The subsequent delay stems from the Supreme Court's decision in N. L. R. B. v. Radio & Television Broadcast Eng'rs Union, Local 1212, supra. There it was held that a Board determination, comparable in scope to that made by the Board in the instant case, did not satisfy the requirements of § 10(k) and hence could not serve as the basis for a cease and desist order under § 10(c).[8] Confronted with this decision, Safeway petitioned the Board to reopen the 10(k) proceeding, to set aside its decision, and to make a final determination in accordance with the principles expressed in the Radio & Television Broadcast case. On February 2, 1961 the Board granted the petition. Because of this, defendant finds itself without a 10(k) determination of the controversy which the Board heard 12 months ago.

■■■ At the time when the Board made its initial decision the Courts of Appeals were divided on the type of determination required by § 10(k). N. L. R. B. v. Local 450, Int'l Union of Operating Eng'rs, 5 Cir., 1960, 275 F.2d 408 had held that the Board only needed to determine whether a union charged with

---

6. Dooley v. Highway Truckdrivers, Local 107, D.C.Del.1960, 182 F.Supp. 297, 303 (collecting cases).

7. The application of defendant for reconsideration and oral argument filed on

September 12, 1960 was denied by the Board on September 28, 1960.

8. 29 U.S.C.A. § 160(c).

a § 8(b) (4) (D) violation was entitled to the work in dispute either by an order or certification of the Board, or under a collective bargaining agreement. On the other hand, N. L. R. B. v. United Ass'n of Journeymen, 3 Cir., 1957, 242 F.2d 722, N. L. R. B. v. United Broth. of Carpenters, 7 Cir., 1958, 261 F.2d 166, and N. L. R. B. v. Radio & Television Broadcast Eng'rs Union, Local 1212, 2 Cir., 1959, 272 F.2d 713 had held that § 10(k) made it mandatory for the Board to determine in an arbitration type of proceeding whether one union or the other was entitled to the disputed work and to make an affirmative award of the work in accordance with its decision. The Board chose to follow the Fifth Circuit and to seek *certiorari* from the adverse determination by the Second Circuit in N. L. R. B. v. Radio & Television Broadcast Eng'rs Union, Local 1212, supra. The Supreme Court granted *certiorari* on May 31, 1960, 363 U.S. 802, 80 S.Ct. 1238, 4 L.Ed.2d 1145, three months before the Board rendered its 10(k) determination in the present case. Although the Supreme Court's decision on January 9, 1961 established that the Board's conception of its duties under § 10(k) was erroneous, it cannot be said that the Board's interpretation of § 10 (k) was unreasonable in light of the Fifth Circuit precedent and the pendency of *certiorari*.

The purpose of a 10(*l*) injunction is to protect the public interest in furthering a peaceful continuation of industrial activity pending dispositive Board Action of a jurisdictional dispute. Douds v. Wood, Wire & Metal Lathers Int'l, supra, 245 F.2d at page 225. Picketing, if renewed, will result in the shut-down of a food processing plant, and, because of the grievance of 3 employees, between 165 and 170 workers will be thrown out of their jobs. These circumstances, coupled with the reason for the Board's delay, make it neither just, proper or appropriate to vacate the injunction without first giving the Board a further reasonable period of time within which to make a 10(k) determination conformable to the principles stated in N. L. R. B. v. Radio and Television Broadcast Eng'rs Union, Local 1212, supra.

By telegrams addressed to the Court the parties have agreed to stand on the record which they have previously made in the § 10(k) proceeding, but have reserved to themselves the right to submit supplemental briefs. The Board, it is supposed, will give the case precedence. In view of the past delays the preliminary injunction will be vacated unless within 60 days from date hereof the Board has made its determination under § 10(k). Precedent for such an injunctive limitation finds general support in Alpert v. International Broth. of Electrical Workers, Local 90, D.C. Conn.1958, 163 F.Supp. 774.

Let an order by petitioner be submitted consistent with this opinion, with the form thereof approved by counsel for defendant and for Safeway.