Herbert S. DAWIDOFF, Acting Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellant,

v.

MINNEAPOLIS BUILDING & CONSTRUCTION TRADES COUNCIL, AFL–CIO and Local No. 34, Sheetmetal Workers International Association, AFL–CIO, Respondents-Appellees.

No. 76–1891.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1976.

Decided March 1, 1977.

Wilma B. Liebman, N. L. R. B., Washington, D. C., for petitioner-appellant; Wilma E. Liebman, Atty., John S. Irving, Jr., and John E. Higgins, General Counsel, Harold J. Datz, Assoc. Gen. Counsel and Joseph E. Mayer, Asst. Gen. Counsel, Washington, D. C., on brief.

Samuel I. Sigal, Minneapolis, Minn., for respondents-appellees.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

* The Honorable Robert Van Pelt, Senior Judge, United States District Court for the District of Nebraska, sitting by designation.

ROSS, Circuit Judge.

In this appeal the Minneapolis Building and Construction Trades Council, AFL–CIO and Local 34, Sheetmetal Workers International Association, AFL–CIO, challenge the issuance of an injunction which has halted the picketing of Krasen Plumbing and Heating, Inc., a subcontractor at a school construction site in Howard Lake, Minnesota.

The district court granted the injunction pursuant to § 10(*l*) of the National Labor Relations Act as amended, 61 Stat. 149; 73 Stat. 544; 29 U.S.C.A. § 160(*l*), with the understanding that the National Labor Relations Board, appellant herein, would appeal within a ten day period. The district court further provided that the injunction order would remain in effect until a decision in this court is rendered. We affirm in part, reverse in part, and remand to the district court for further action consistent with this opinion.

The § 10(*l*) injunction process begins when an NLRB regional officer or attorney, upon finding that reasonable cause that certain enumerated unfair labor practices exist, petitions the district court for appropriate injunctive relief. In this particular case, the officer's petition to the district court alleged that he had reasonable cause to believe that § 8(b)(7)(A) and (C) of the Act, 29 U.S.C.A. § 158(b)(7)(A) and (C) had been violated. Briefly, this statutory section makes it an unfair labor practice for a currently uncertified union to picket or threaten to picket any employer where another union is already recognized, where an appropriate petition has not been filed by the picketing union within 30 days, *and where the object of the picketing in either case is forcing or requiring an employer or employees to recognize or bargain with or select such labor organization as the representative of the employees.* See Samoff v. Building & Construction Trades Council, 475 F.2d 203, 205 (3d Cir. 1973), *vacated as moot,* 414 U.S. 808, 94 S.Ct. 151, 38 L.Ed.2d 44 (1973). In citing subparagraphs (A) and (C) violations the regional officer has alleged that during the pertinent time period

Krasen employees had recognized another labor organization, the Christian Labor Association, as its representative; that a question concerning representation could not appropriately be raised under § 9(c) of the Act; that no charge under § 8(a)(2) has been filed against Krasen; and that the picketing had been conducted for more than 30 days without the filing of a petition for an election pursuant to § 9(c) of the Act. It is also asserted that the picketing Union had the proscribed object of forcing the recognition and representation of its organization and that the picketing was in furtherance of the illegal object.

The facts are relatively simple. Krasen is a mechanical subcontractor at the Howard Lake School construction job, and it is undisputed by the Unions that Krasen employees are currently represented by the Christian Labor Association under a 1976–78 contract; previously there were represented by the C.L.A. in a 1974–76 contract. The Sheetmetal Workers Local No. 34 is an AFL–CIO labor organization associated with the Minneapolis Building and Construction Trades Council, a group of AFL–CIO building trades affiliates. [Hereinafter Unions.] It was stipulated by the parties at trial that the wages and other monetary and economic benefits paid by Krasen Plumbing and Heating, Inc. were lower for the same kind of work than the wages and benefits provided for by the contracts of the local AFL–CIO unions. Beginning on August 5, 1976 the Union placed its banner near the gate used by Krasen employees at the school job site. The banner protested the Krasen work performed at substandard wages and benefits. On September 27, 1976, the Regional Director petitioned the district court for injunctive relief and on October 11, 1976, an injunction issued and picketing ceased. Testimony from Mr. Adolfson of the general contracting firm and Mr. Gustafson, business manager of the Minneapolis Building and Construction Trades Council indicated that the effect of the bannering had been to cause a number of employees to refuse to work and the job to fall behind schedule.

The focus of the district court's inquiry necessarily concerned the object of the Union protest at the school site. The Unions contended that the bannering was for the sole purpose of forcing Krasen to pay the prevailing area wage;[1] the Board contends that the Unions had statutorily proscribed recognitional and organizational objectives. The Board's proffered evidence of an *illegal* object was primarily supplied by two Krasen employees who testified that on July 27, 1976, just before the bannering began on August 5, they were approached by two men and asked to organize the shop for the AFL–CIO. Specifically, it is alleged by employee Donald J. Clemmer that on that day he was approached by William F. (Tiny) Johanneck, a member of Local 34, and asked to organize Krasen as an AFL–CIO shop; the substance of this conversation was corroborated by Mark Jensen, Clemmer's apprentice who allegedly overheard the discussion. Clemmer testified that he told Johanneck he had previously been kicked out of Local 34, and Johanneck purportedly replied that if Clemmer organized the shop he would automatically come into the Union. This version of the facts is sharply disputed by Johanneck and Leonard C. Bienias, field representative for the Trades Council, who say they were on the Howard Lake site that day only to check building trades cards of employees and to determine whether the employers were paying area standard wages. Johanneck and Bienias further aver that *Clemmer* initiated the conversation with Johanneck; that Mark Jensen was *not* present during the conversation; that Johanneck did not ask anyone to sign up with Local 34; and finally that Clemmer raised the issue of his having been dismissed from the Union. Obviously the testimony conflicts and the facts are in dispute.

 The parties and the court below have correctly cited *Wilson v. Milk Drivers & Dairy Employees Local 471*, 491 F.2d 200

(8th Cir. 1974) as the authority for this case. In *Wilson* this court gave meaning to the "reasonable cause" standard of the statute and defined the role of the district court in assessing a request for injunctive relief under that standard:

> In proceedings under section 10(*l*) of the Act the district court is not called upon to decide whether, in fact, a violation has occurred. The determination of this question is reserved exclusively for the Board with review by the Court of Appeals under section 10(e) and (f) of the Act. The inquiry of the district court is limited to a determination of whether the Board had reasonable cause to believe the Act was being violated as charged, and if it so concludes, it must grant such relief as it deems just and proper. *Local Joint Board Hotel & Restaurant Employees etc. v. Sperry* (8th Cir., 1963), 323 F.2d 75, 77; *Schauffler v. Local 1291, International Longshoremen's Association* (3d Cir., 1961), 292 F.2d 182, 187–188.

> The statutory standard of "reasonable cause" is satisfied if there is a showing of factual issues which must be resolved by the Board. Section 10(*l*) commands the courts to disregard their traditional reluctance to issue preliminary injunctions when there is a substantial conflict in the evidence. *Kennedy v. Sheet Metal Workers Int. Ass'n Local 108* (D.C.C.D.Cal., 1968), 289 F.Supp. 65, 91. *See also, Local Joint Board v. Sperry, supra*, 323 F.2d at 77–78; *Douds v. Milk Drivers & Dairy Employees Union* (2d Cir., 1957), 248 F.2d 534, 537.

*Wilson v. Milk Drivers & Dairy Employees Local 471, supra*, 491 F.2d at 203. The requisite demonstration of "factual issues which must be resolved by the Board" has been made. The record has shown conflicts in the evidence from which "different inferences and conclusions may be drawn" which the Board should resolve. *Id.* at 206.

*Houston Building & Construction Trades Council*, 136 NLRB 321, 323 (1962).

---

1. The Board has recognized in previous decisions the legitimacy of picketing which seeks only to maintain the area prevailing wage.

Recognizing the sufficiency of this showing under this circuit's present rule, the district court correctly found that the Board had "reasonable cause" to believe the Act was violated, though it *incorrectly* proceeded to judge the credibility of the witnesses and relate its version of what the crucial facts were.[2] Such determinations in a § 10(*l*) proceeding invade the province of the National Labor Relations Board which properly acts as the primary fact-finder. *See Local Joint Board, Hotel & Restaurant Employees v. Sperry,* 323 F.2d 75, 77–78 (8th Cir. 1963).

The Unions, appellees herein, do not dispute that the district court justifiably found "reasonable cause" based on the contested factual issues; nor do the Unions rest their case "upon the possibility of this Court overturning" the *Wilson* decision, even though the chance for critical review of the *Wilson* rationale motivated the district court to grant an injunction of limited duration which would ensure a prompt appeal.[3]

The Union has forcefully argued, however, that an injunction of indefinite duration pending an NLRB decision would, due to the lengthy processes of that body and the facts of this particular case, be dispositive of the dispute and that this was not the intention of § 10(*l*).

Previous decisions of this court do not indicate that a court is completely without discretion in assessing the propriety of injunctive relief or in tailoring grants of injunctive relief once the reasonable cause finding has been made. The § 10(*l*) statutory language itself supports this point. Though the statute *mandates* that the regional officer *petition* the court for injunctive relief if he finds reasonable cause to believe that a charge is true, the district court is given jurisdiction "to grant such injunctive relief or temporary restraining order as it deems just and proper * *." 29 U.S.C.A. § 160(*l*). The dual considerations of reasonable cause and the propriety of an injunctive order have been recognized by this court in cases arising under both §§ 10(*l*) and 10(j)[4] of the Act. In *Local Joint Board, Hotel & Restaurant Employees v. Sperry, supra,* 323 F.2d 75, 77, after the reasonable cause finding was affirmed, it was agreed to be "appropriate, just and proper" for the district court to enjoin the Union under a § 10(*l*) petition in order to preserve the issues for orderly determination by the Board. The *Sperry* court found "evidentiary support for the [district] court's determination that the picketing induced employees of suppliers and carriers to refuse pick up and delivery services to the employer." *Id.* at 78. As further evidence of equitable considerations, the court concluded that "[t]he Union has failed to demonstrate that the trial court's reasonable cause determination is clearly erroneous *or that the court abused its discretion in*

---

**2.** The Court observed: "on cross examination of Donald J. Clemmer, respondents' counsel successfully impeached the witness' credibility by revealing that Clemmer had at one time been a member of the AFL–CIO, but had lost his membership over a dispute with the union during a period when he was an employer engaged in sheet metal construction. The circumstances surrounding his loss of membership were left somewhat vague but suffice it to say that Clemmer's demeanor evidenced substantial bias and prejudice against the union." The court later concluded: "[o]rdinarily, the Court, whether sitting as a tribunal of law or equity, would be required to judge the evidence and weigh the testimony of all the witnesses. Based on the testimony given and weighing the credibility of each witness, this Court would conclude that the injunction should not lie." The court made it clear that it issued the order because it was "compelled" to do so on the authority of *Wilson v. Milk Drivers & Dairy Employees Local 471, supra,* 491 F.2d 200.

**3.** This court respectfully declines to modify the "conflicting evidence" test instituted in *Wilson v. Milk Drivers & Dairy Employees Local 471, supra,* 491 F.2d 200, and indeed could not do so except by en banc decision or an intervening contrary decision by the Supreme Court.

**4.** Section 10(j) grants the district court jurisdiction to provide injunctive relief from other unfair labor practices. *Squillacote v. Local 248, Meat & Allied Food Workers,* 534 F.2d 735, 741 (7th Cir. 1976). Unlike § 10(*l*) it makes the decision to seek relief discretionary with the Board. *Id.* We do not suggest *however that* all of the same rules apply to Sections 10(j) and 10(*l*).

*granting the temporary injunction." Id.* at 79 (emphasis added) (footnote omitted).

Adoption of the principle that some measure of discretion is appropriate in the § 10(*l*) decision-making process is not at odds with this court's decision in *Wilson v. Milk Drivers & Dairy Employees Local 471, supra,* 491 F.2d 200. In *Wilson* the court took into consideration the need for an equitable remedy and cited evidence that the employer suffered a substantial loss of sales as a result of the union action. The court concluded: "[t]his appears to be the typical situation in which injunctive relief would be just and proper after a finding there was reasonable cause to believe the Act had been violated." *Wilson v. Milk Drivers & Dairy Employees Local 471, supra,* 491 F.2d at 206. Furthermore the court reiterated that injunctive relief would be proper "when the circumstances of a case create a reasonable apprehension that the statutory remedial purposes will be frustrated in the absence of such relief." *Id.* at 203.

█ As a district court may properly consider whether the statutory remedial purposes will be endangered as a discretionary element in its decision-making, it may also consider how other policies, also of central importance to the intent of the Act, may be affected by granting, withholding or limiting the equitable remedy. The legislative history of the 1947 amendments which added § 10(*l*) make it clear that the crippling effect of certain unfair labor practices by unions and the inability of the administrative and judicial machinery of that time to effectively deal with them motivated the legislation.[5] In an often-quoted passage from Senate Report No. 105, the committee writes that "[t]ime is usually of the essence" and the "relatively slow procedure of

Board hearing and order" has "failed to achieve the prompt elimination of the obstructions caused by unfair practices.[6] "Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." [7]

Though this portion of the Act aims at the swift stoppage of certain serious unfair labor practices, the framework of the section also shows a clear preference for ultimate *administrative* disposition of the initial charges and the merits of the claim.[8] Particularly there is no evidence of the fact that Congress intended § 10(*l*) injunctions to be permanent or dispositive of the merits or that this would be a permissible side effect.

Senator Taft explained to the Senate how that section from the committee bill would work:

The bill provides that that type of strike is an unfair labor practice. When a strike occurs, the man who is damaged by it is to go to the National Labor Relations Board and file a charge, and they give him a hearing. If he can persuade them to do so the Board can go to court and get a *temporary* injunction against further operation of the strike while the National Labor Relations Board is hearing the question as to whether it is an illegal strike or not, and deciding whether it will issue a *permanent* injunction against that particular strike.

93 Cong.Rec. 3954 (1947), *reprinted in* II NLRB, Legislative History of the Labor

5. *See* S.Rep.No.105, 80th Cong., 1st Sess. 7 (1947), *reprinted in* I NLRB, Legislative History of the Labor Management Relations Act, 1947, at 413 (1948).

6. *Id.* at 8; I NLRB at 414.

7. *Id. See Muniz v. Hoffman,* 422 U.S. 454, 466, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975).

8. The officer or regional attorney is required, after reasonable cause is found, to petition for appropriate injunctive relief pending final adjudication *by the Board with respect to such matter.* 29 U.S.C.A. § 160(*l*) (emphasis added). *See also* 93 Cong.Rec. 4256 (1947), *reprinted in* II NLRB, Legislative History of the Labor Management Relations Act, 1947 at 1057 (1948) (remarks of Sens. Morse and Ellender).

Management Relations Act, 1947 at 1013 (1948) (remarks of Sen. Taft) (emphasis added).

In debate on proposed amendments to the committee bill, which were later defeated, Senator Morse gave this defense of the committee version:

* * * The procedure of the committee bill is set forth in section 10(j), (k), and (*l*) of the committee bill which, in my judgment, fully meets the problem of enforcing these provisions. * * * Section 10(*l*) requires that with respect to secondary boycotts and jurisdictional strikes the regional attorney of the National Labor Relations Board shall petition for appropriate injunctive relief pending the final adjudication of the Board with respect to the case.

It has been my consistent endeavor while this legislation has been under discussion to vest determination of labor problems so far as it is humanly possible to do so in a single organization that is expert in labor problems. I assume that if the debates on this bill have served no other purpose they have demonstrated to all Members of the Senate the complexity and difficulty of this field.

* * * * * *

It is one thing to grant to the district courts, upon application of the Board, *an interim power to maintain the status quo pending resolution of the problem by the body which we have selected as the expert body to handle such problems.* It is quite a different thing to do what this bill proposes, namely, to throw these matters for final decision into the laps of the approximately 250 district judges of the United States, some few of whom may have some knowledge of the field, but all of whom can certainly not pretend to be experts.

93 Cong.Rec. 5043 (1947), *reprinted in* II NLRB, Legislative History of the Labor Management Relations Act, 1947 at 1360–61 (1948) (remarks of Sen. Morse) (emphasis added). *See also* 93 Cong.Rec. 5045 (1947),

*reprinted in* II NLRB, Legislative History of the Labor Management Relations Act, 1947 at 1364–65 (1948) (remarks of Sens. Morse, Smith and Donnell).

Moreover, the decisions of this court have recognized that the power to enjoin may be exercised in part for the very purpose of maintaining the status quo pending adjudication by the Board of the unfair labor practice charge. *See Local Joint Board, Hotel & Restaurant Employees v. Sperry, supra,* 323 F.2d at 77. But it is an anomaly that the exercise of that power, may, in certain cases, actually *defeat* the issuance of an effective order by the Board due to the length of time required to receive a Board order.

In this case picketing abated pursuant to court order on October 11, 1976. On October 28, 1976, a hearing was held before the Administrative Law Judge, and on December 9 briefs were filed. No decision by the Administrative Law Judge has been rendered as of the writing of this opinion. We believe this delay to be inexcusable in a situation such as this. When the opinion of the Administrative Law Judge is finally issued, appeal may then be taken to the Board. The testimony of Clinton Knorr, Krasen vice president, indicates that the work at the school site will be complete by April or May 1977. At the hearing before the district court the NLRB lawyer, under persistent questioning by the court, was unwilling or unable to provide any accurate timetable for movement of the cases on the Board's docket and indicated there was no way he could find out. Upon further questioning he indicated a possible time span of six months to one year total from October 28, 1976. He had no suggestions as to how to further expedite the case. The Board's argument is unpersuasive that the Union, if finally successful, will be free to resume picketing at another site after the Board's decision. This is not the equivalent of being free to resume lawful picketing at the school construction site.

Considering the relatively short duration of the work on the school site, and

particularly in view of the concededly simple factual determinations to be made in this case, we hold that the district court may properly consider limiting the duration of the § 10(*l*) injunction in an effort to expedite the Board's review.

The court is aware that this holding, particularly if injunctions expire prior to a Board decision, may be inimical to the Act's purpose of containing certain unfair labor practices. This purpose has, however, been given effect by proper issuance of an injunction initially, and the court must at some point weigh the somewhat conflicting policies of this Act. Though we express no view on the merits, it is always possible that the Union is being enjoined from area standards picketing, which is considered lawful by the Board. In cases brought under § 10(*l*), the respondent should be given the opportunity for a Board hearing while a rescinding order can still be effective.

At best this problem should be solved legislatively by providing the directive and the means for the Board to expedite the determination of these claims. Recently the Third Circuit in *Eisenberg v. Hartz Mountain Corp.*, 519 F.2d 138, 144 (3d Cir. 1975) expressed the concern that unless handled expeditiously a § 10(j) "temporary injunction, entered without reaching the ultimate merits of a dispute may become, in effect, a final disposition of the controversy." *Id.* at 144. Accordingly, the court adopted a rule for the circuit that gives that Board a maximum six months injunction under § 10(j) while the case is before an Administrative Law Judge. An additional six months injunction to permit Board review may be obtained after again petitioning the district court. *Id.* The National Labor Relations Board's own rules provide that a complaint subject to § 10(*l*) be given priority in "successive steps following its issuance (until ultimate enforcement or dismissal by the appropriate circuit court of appeals) over all cases except cases of like character." 29 C.F.R. § 102.97(a).[9]

Accordingly, this case is remanded to the district court so that the court may immediately take evidence from the parties as to the minimum time necessary for Board review if the Board were to accord the case its most expeditious handling. The court may then restrict the term of its injunction to a period not shorter than that period of time. The district court is sustained on the reasonable cause finding, but the district court's determinations concerning credibility are to have no effect on any decision on the merits of this case at any stage of subsequent proceedings.

The court stresses the limited nature of its holding. Our prior holding that "[t]he propriety of injunctive relief does not depend upon *traditional equitable principles*" has not been abrogated. *Wilson v. Milk Drivers & Dairy Employees Local 471, supra,* 491 F.2d at 203 (emphasis supplied). Nor do we now decide that for all purposes a district court has equal amounts of discretion with respect to granting or denying § 10(j) and § 10(*l*) injunctive remedies. We hold only that in a situation such as this, a court may properly limit the duration of its § 10(*l*) injunctive remedy when the practical effect of an unlimited injunction may be to deny the parties a final determination of the charge by the NLRB prior to the completion of the picketed project.

Remanded for further proceedings not inconsistent with the views expressed in this opinion.

---

**9.** Criticisms have been made in the past of the Board's lack of success in actually achieving expeditious handling of these cases. *See* Aar-

on, *The Labor Injunction Reappraisal,* 14 Lab. L.J. 41, 67 (1963). *See also Alpert v. IBEW, Local 90,* 163 F.Supp. 774 (D.Conn.1958).